Preferred Care v. Horn 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-343-CV

Â Â Â Â Â PREFERRED CARE HEALTH FACILITIES
Â Â Â Â Â OF TEXAS I, INC., d/b/a 
Â Â Â Â Â ENNIS CARE CENTER,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â LAURIE HORN,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From 40th District Court 
Ellis County, Texas
Trial Court # 49,469 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â On February 16, 1995, the parties filed an agreement to dismiss the appeal. In the relevant
portion, Rule 59(a) of the Texas Rules of Appellate Procedure provides:
(1) The appellate court may finally dispose of an appeal or writ of error as follows:
(A) In accordance with an agreement signed by all parties or their attorneys and
filed with the clerk; or
(B) On motion of appellant to dismiss the appeal or affirm the judgment
appealed from, with notice to all other parties; provided, that no other party
shall be prevented from seeking any appellate relief it would otherwise be
entitled to. 
Tex. R. App. P. 59(a).
Â Â Â Â Â Â The parties state that have settled their controversy. The agreement is signed by both the
appellant's and the appellees' attorney. They request that we tax the costs of the appeal against
the appellant. 
Â Â Â Â Â Â Pursuant to this agreement, the cause is dismissed with the appellant to bear the costs.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Chief Justice Thomas,
Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Justice Vance
Dismissed
Opinion delivered and filed March 8, 1995
Do not publish



um.  According to the
City Manager, it was the responsibility of the CityÂs engineers to review the
plat prior to approval and to determine, in part, that the CityÂs
infrastructure, including its sewer capacity, was sufficient.Â  It was the
opinion of the engineers that the sewer capacity of the City was sufficient to
support the subdivision until the end of May, 2006 when the engineers informed
the City that the City was operating above its capacity, and that the
moratorium was needed to attempt to get the problem under control until a new
sewer plant could be constructed.

The final approval of the plat included a
statement by the City Engineer that the plat conformed to the CityÂs
subdivision ordinance and recommended approval of the final plat.Â  A second
engineer certified that Âproper engineering considerationÂ had been given to
the plat that had been signed on June 5, 2006, which was the same day that the
first moratorium was voted on by the City Council.Â  The plat did not become
effective until it was recorded with the County Clerk of McLennan County, which was on June 5, 2006.

Â Â Â Â Â Â Â Â Â Â Â  The CityÂs moratorium was adopted by
an ordinance on its second reading on June 12, 2006 to prevent the connection
of any new residential or commercial buildings to the CityÂs sewer system for a
period of 120 days.Â  During the 120 days, the City agreed to exempt from the
moratorium the fifteen lots in Phase V that had either been sold or were under
contract to be sold by BMTP as of June 5, 2006.Â  The original moratorium was
extended and reworded at various times until November 17, 2008, when it was
repealed and replaced by a new moratorium that was in large part substantively
the same as the prior moratoriums.Â  

Â Â Â Â Â Â Â Â Â Â Â  On April 24, 2008, BMTP filed a
declaratory judgment action against the City of Lorena seeking a declaration
that the CityÂs moratorium in effect at that time did not apply to Phase V;
that the City could not enforce the moratorium as to the lots in Phase V
because they were previously approved for development; and that the City could
not deny building permits for the remaining lots in Phase V due to the
moratorium.[1]

Â Â Â Â Â Â Â Â Â Â Â  BMTP filed a motion for summary judgment
and the City filed a plea to the jurisdiction, both of which were denied by the
trial court.Â  The City then filed a traditional motion for summary judgment.Â 
BMTP responded to the CityÂs motion, filed a motion to reconsider the denial of
its motion for summary judgment, and amended its petition to include an inverse
condemnation cause of action.Â  The trial court granted the CityÂs motion for
summary judgment and denied BMTPÂs motion to reconsider the trial courtÂs prior
denial of its motion for summary judgment.Â  The City filed another motion for
summary judgment based on the inverse condemnation claim, which the trial court
also granted.Â  The trial court also awarded the City its attorneyÂs fees.

Standard of Review

Both partiesÂ motions for summary judgment sought
judgments that would declare the partiesÂ rights pursuant to the declaratory
judgment actions.Â  We review declaratory judgments under the same standards as
other judgments.Â  See Tex. Civ.
Prac. & Rem. Code Ann. Â§ 37.010 (Vernon 2008).Â  We look to the
procedure used to resolve the issue before the trial court to determine the
standard of review on appeal.Â  City of Galveston v. Tex. Gen. Land Office,
196 S.W.3d 218, 221 (Tex. App.ÂHouston [1st Dist.] 2006, pet. denied).Â  When a
trial court resolves a declaratory judgment action on competing motions for
summary judgment, we review the propriety of the declaratory judgment using the
same standards that we follow in reviewing a summary judgment.Â  Id.

We review a trial courtÂs
decision to grant or to deny a motion for summary judgment de novo.Â  See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex., 253 S.W.3d 184, 192, 199 (Tex. 2007) (citing rule for review of grant of summary judgment and reviewing denied
cross-motion for summary judgment under same standard).Â  Although a denial of
summary judgment is not normally reviewable, we may review such a denial when
both parties move for summary judgment and the trial court grants one motion
and denies the other.Â  Id. at 192. Â In our review of such cross-motions,
we review the summary judgment evidence presented by each party, determine all
questions presented, and render the judgment that the trial court should have
rendered.Â  Tex. Mun. Power Agency, 253 S.W.3d at 192 (citing CommÂrs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997)).

Under the traditional
summary judgment standard, the movant has the burden to show that no genuine
issues of material fact exist and that it is entitled to judgment as a matter
of law.Â  Tex. R. Civ. P. 166a(c);
Nixon v. Mr. Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985).Â  If the order granting the summary judgment does not specify the grounds upon
which judgment was rendered, we must affirm the summary judgment if any of the
grounds in the summary judgment motion is meritorious.Â  FM Props. Operating
Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

Local Government Code Chapter 212

Â Â Â Â Â Â Â Â Â Â Â  BMTP complains that the trial court
erred by granting the CityÂs motion for summary judgment and denying its motion
for summary judgment because chapter 212 of the Local Government Code prohibits
the imposition of a moratorium on its property that had already been approved
for development prior to the imposition of the original moratorium.

Â Â Â Â Â Â Â Â Â Â Â  Under section 212.135 of the Local
Government Code, a municipality has the power to institute a moratorium on
property development if it demonstrates a Âneed to prevent a shortage of
essential public facilities.ÂÂ  Tex. Loc.
GovÂt Code Ann. Â§ 212.135(a) (Vernon 2008).Â  Sewer facilities are
included in public facilities.Â  Tex.
Loc. GovÂt Code Ann. Â§ 212.131(1) (Vernon 2008).Â  Property development
is defined as Âthe construction, reconstruction, or other alteration or
improvement of residential or commercial buildings or the subdivision or the
replatting of a subdivision of residential or commercial property.ÂÂ  Tex. Loc. GovÂt Code Ann. Â§ 212.131(3)
(Vernon 2008).Â  

Â Â Â Â Â Â Â Â Â Â Â  In order to impose a moratorium on
property development to prevent a shortage of essential public facilities,
certain written findings must be included by the municipality, one of which is
a summary of Âevidence demonstrating that the moratorium is reasonably limited
to property that has not been approved for development because of the
insufficiency of existing essential public facilities.ÂÂ  Tex. Loc. GovÂt Code Ann. Â§
212.135(b)(2)(B) (Vernon 2008).

Â Â Â Â Â Â Â Â Â Â Â  BMTP contends that the approval of
their plats constituted Âproperty developmentÂ pursuant to section 212.131, and
that the moratorium therefore did not, and could not, apply to sewer
connections on any of the vacant lots in their approved subdivisions pursuant
to the restriction in section 212.131(b)(2)(B) that excludes property that has
been approved for development.Â  The City contends that BMTPÂs scope of approved
property development is too broad and that once BMTP completed all of the
property development that it was permitted to complete, which was the
subdivision and infrastructure only, additional approval was required separate
and apart from that to develop the property further, including connections to
the sewer system.Â  According to the City, once the subdivision was complete
according to the approved plat, then BMTPÂs property development that was
approved was completed and the City could institute a moratorium to prevent
additional development of that property.

Â Â Â Â Â Â Â Â Â Â Â  Prior to the amendment of the statute
in 2005, Âproperty developmentÂ was defined in section 212.131 of the Local
Government Code as Âthe construction of residential buildings.ÂÂ  See Acts
2001, 77th Leg., ch. 441, effective September 1, 2001; amended by Acts
2005, 79th Leg., ch. 1321 (H.B. 3461), Â§ 1, effective September 1, 2005.Â  The
statute was amended in 2005 to add other types of residential development as
well as commercial development into the definition of Âproperty development.ÂÂ 
The City contends that the statute should be read to contain two separate types
of property development; the first being the Âconstruction, reconstruction, or
other alteration or improvement of residential or commercial buildings,Â and
the second, Âthe subdivision or replatting of a subdivision of residential or
commercial property.ÂÂ  The City further contends that each of the two types of
development is separate and distinct for purposes of determining whether
property has been Âapproved for development.ÂÂ  See Tex. Loc. GovÂt Code Ann. Â§
212.135(b)(2)(B) (Vernon 2008).Â  

Neither party has cited to, nor have we found any
authority regarding the scope of chapter 212.Â  We find that the definition of
Âproperty developmentÂ includes the full range of development contemplated by
section 212.131(3) and that it does not describe each of the component parts
separately and distinctly from the others.Â  

This construction of section 212.131(3) is similar
to the application of the term ÂprojectÂ in Chapter 245 of the Local Government
Code, which regulates the issuance of permit applications.Â  See Tex. Loc. GovÂt Code Ann. Ch. 245
(Vernon 2005).Â  The term ÂprojectÂ in Chapter 245 has been held to encompass
the entire development process from the preliminary plat to the construction of
a structure within the subdivision, which does not change unless the scope of
the ÂprojectÂ changes, regardless of changes in ownership.Â  See Hartsell
v. Town of Talty, 130 S.W.3d 325, 328-29 (Tex. App.ÂDallas 2004, pet.
denied).Â  Chapter 245 contemplates that more than one permit is required to
complete a project, but the project includes the entire process, not the
discrete components.Â  The definition of Âproperty developmentÂ is similarly
broad and includes the entire process from platting to finishing construction
of infrastructure and buildings.

Â Â Â Â Â Â Â Â Â Â Â  We hold that the trial court erred by
granting the CityÂs motion for summary judgment based on Subchapter E of
Chapter 212 of the Local Government Code.Â  Further, we find that the trial
court erred by denying BMTPÂs motion for summary judgment to make the
declarations as prayed for by BMTP.Â  BMTP was entitled to the following
declarations:

(1)Â Â Â 
Under Chapter 212 of the Local
Government Code, any moratorium currently in effect on the issuance of sewer
taps within the City of Lorena and its extraterritorial jurisdiction does not
apply to any of the lots contained in South Meadows Estates, because South
Meadows Estates was approved for development before the adoption of these
moratoriums;

Â 

(2)Â Â Â 
The City shall not enforce the
current moratorium or any extension thereof to the lots contained in South
Meadows Estates because those lots have already been approved for development;

Â 

(3)Â Â Â 
The City shall not deny
building permits for the remaining lots in South Meadows Estates based upon any
existing moratorium. 

Â 

By this holding, we express no opinion as to
whether the City has the ability to deny a permit for reasons other than the
moratorium or BMTPÂs damages, if any, that might be related thereto.Â  We
sustain issue one.Â  We sustain issue two solely on the basis of subchapter
212.Â  Because we have determined that Phase V was not subject to the moratorium
pursuant to chapter 212, we do not reach the issues of whether or not the
moratoriums were enacted in conformance with the requirements of chapter 212 or
whether chapter 245 applies.

Inverse Condemnation

Â Â Â Â Â Â Â Â Â Â Â  Â BMTP complains that the trial court
erred by granting the CityÂs motion for summary judgment based on BMTPÂs
inverse condemnation claim.Â  BMTP alleged in its petition that the moratorium
constituted a taking pursuant to article I, section 17 of the Texas
Constitution.Â  Tex. Const. art.
I, Â§ 17.Â  The CityÂs motion for summary judgment sought a finding that as a
matter of law the moratorium could not constitute a compensable taking.Â  

A taking may be either physical or regulatory.Â  Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998).Â  A compensable
regulatory taking occurs if: (1) the governmental regulations deprive a
property owner of all economically viable use of the property or totally
destroys the propertyÂs value; or (2) the governmental restrictions
unreasonably interfered with BMTPÂs rights to use its property.Â  See id.Â 
We are to conduct an essentially Âad hoc, factual inquir[y]Â using the
following guiding factors: (1) the economic impact of the regulation on BMTP;
(2) the extent to which the regulation has interfered with BMTPÂs reasonable
investment-backed expectations; and (3) the character of the CityÂs action.Â  Sheffield
Dev. Co. v. City of Elgin Heights, 140 S.W.3d 660, 672 (Tex. 2004).Â  In
addition to these factors, which are generally referred to as the Penn
Central factors, we should consider all relevant attendant circumstances as
well.Â  Penn Central Transport Co. v. New York City, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978); Hallco Tex., Inc v. McMullen County, 221 S.W.3d 50, 56 (Tex. 2006).

We note that, based on the precedent of the Texas
Supreme Court in Sheffield, the burden required in the factual
allegations presented by BMTP is a high one.Â  Id.Â  Sheffield complained
that a temporary moratorium constituted a compensable taking but the Court
disagreed.Â  Sheffield also related to a purchaser of property who
purchased the property relying on certain zoning standards then in effect, who
had extensive contacts with City officials regarding his plans for the
development, and who was similarly, as the Court put it, ÂblindsidedÂ by the
CityÂs moratorium.Â  See Sheffield Dev. Co., 140 S.W.3d at 678.Â  However,
while the Court did not approve of the CityÂs methods in Sheffield, the
Court nevertheless found that there was not a constitutionally compensable
taking, either for the change in zoning or for the temporary moratorium.Â  

In Sheffield, however, there was not a
challenge to the ability of the City to impose the moratorium.Â  Sheffield
Dev. Co., 140 S.W.3d at 679.Â  In this case, however, the CityÂs motion for
summary judgment on the inverse condemnation action was premised upon the
application of the moratorium to BMTP.Â  Therefore, we believe that the judgment
entered on the inverse condemnation cause of action must also be reversed and
remanded because of our finding that the moratorium did not apply to BMTPÂs
lots.Â  We sustain issue three.

AttorneyÂs Fees

BMTP complains that the trial court abused its
discretion by awarding attorneyÂs fees to the City and denying its request for
attorneyÂs fees pursuant to the Uniform Declaratory Judgment Act.Â  Tex. Civ. Prac. & Rem. Code Ann. Â§
37.009 (Vernon 2008).Â  Section 37.009 allows for the recovery of attorneyÂs
fees that are reasonable and necessary as well as equitable and just.Â  Id.Â  Because we have determined that the trial court erred by granting the CityÂs
motion for summary judgment and by denying BMTPÂs motion for summary judgment,
we reverse the award of attorneyÂs fees to the City and remand that issue to
the trial court for a determination of whether attorneyÂs fees should be
awarded and to which party, if any.Â  See State Farm Lloyds v. Borum, 53
S.W.3d 877, 894-95 (Tex. App.ÂDallas 2001, pet. denied) (reversing and
remanding Âbecause the record does not reflect the trial courtÂs reasons for
its award of fees to [the prevailing party], there is no evidence to indicate
whether the trial courtÂs award of fees would also be equitable and just in light
of our opinion in this case.Â).Â  We sustain issue four.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  We find that the trial court erred by
granting the CityÂs motions for summary judgment and by denying BMTPÂs motion
for summary judgment based on the declaratory judgment action.Â  We reverse and
render judgment in favor of BMTP on its declaratory judgment action.Â  We
reverse and remand the inverse condemnation claim to the trial court for
further proceedings.Â  We find that the award of attorneyÂs fees should be
reversed and remanded to the trial court for further proceedings in accordance
with this opinion.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Before Chief Justice
Gray,

Â Â Â Â Â Â Â Â Â Â Â  Justice
Davis, and

Â Â Â Â Â Â Â Â Â Â Â  Judge Sowder[2]

Reversed and rendered in
part; reversed and remanded in part

Opinion delivered and filed
December 22, 2010

[CV06]









[1]Â 
The petition seeking the declaratory judgment was later amended by BMTP to
include all of South Meadows Estates, which included Phase IV.





[2]
The Honorable William C. Sowder, Judge of the 99th District Court of Lubbock County, sitting by assignment of the Chief Justice of the Supreme Court of
Texas pursuant to section 74.003(h) of the Government Code.Â  See Tex. GovÂt Code Ann. Â§ 74.003(h)
(Vernon 2005).